José Pérez-Barros, Administrator of the Estate of Jacinto Pérez-Barros, Plaintiff and Appellant, v. People of Porto Rico, Defendant and Appellee.

No. 4187. Argued November 16, 1927.—Decided July 19, 1928.

*Alemañy & Ramírez* for the appellant. *George C. Butte, Attorney General,* and *José E. Figueras, Fiscal* of the Supreme Court, for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Sections 329, in part, and 330 of the Penal Code read thus:

"Section 329.—That anything which is injurious to health, or is indecent or offensive to the senses, or is an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons . . . . is a public nuisance: . . ." (Laws of 1912, page 103).

"Section 330.—Every person who maintains or commits any public nuisance, the punishment for which is not otherwise prescribed, or who wilfully omits to perform any legal duty relating to the removal of a public nuisance, is guilty of a misdemeanor."

Sections 31 and 32 of "An Act to reorganize the Sanitation Service" (Laws of 1912, page 122) are in part as follows:

"Section 31.—That in the event of the failure of the owner, agent or tenant of any property where a public nuisance exists to remove or abate the same within a reasonable time after the proper notification to perform the work has been served, the sanitary authorities are hereby empowered to remove or abate the nuisance at the expense of said owner, agent or tenant, and the party in interest shall be given due notice of the expenses thereby incurred, and shall reimburse the health authorities therefor . . . This action shall not, however, relieve any such owner, agent or tenant from liability for the violation of the provisions of the sanitary regulations . . .

"Section 32.—That every person whose property may have been, unjustly or illegally destroyed or injured by the enforcement of any order, regulation, ordinance, or by any action taken by the Service of Sanitation, or by its employees or agents exempt from personal liability, may maintain the appropriate action against the Government of Porto Rico for the recovery of proper damages; . . ."

José Pérez Barros, a judicial administrator, brought an action by authority of the law last mentioned for damages arising out of the destruction by health officials of two houses belonging to the heirs of Jacinto Pérez Barros.

The court below, after a trial on the merits, found, among other things, that the property in question was in fact a public nuisance, and that reasonable notice had been given the judicial administrator.

The two houses fronted on different streets and were separated only by a partition. In the rear was a covered court yard. One of the buildings had been previously used as a store, and the other as a dwelling. The court yard probably formed a part of the residence rather than of the place of business. The evidence is not at all clear upon this point. Both buildings had been vacant for some six or eight months at the time of the event which gave rise to the present controversy.

There was evidence tending to show that the court yard was more or less open to the public and that it had been used at times by boys and undisciplined adults as an improvised privy. How often, or to what extent, the court yard was so used, does not appear. There is no intimation that any of the neighbors had ever been annoyed by flies, or by offensive odors, or otherwise.

There was also some testimony pointing to the presence of rats, or to the existence of rat holes beneath the concrete floor of a dining room opening on the court yard. In order to conform to sanitary regulations a concrete floor must extend at least twelve inches below the surface of the ground.

The health officer who reported the nuisance did not recommend the drastic action taken by the department of health. This officer admits without hesitation that the conditions complained of could have been readily corrected. The only difficulty about rat-proofing, he says, was that sand and cement would have had to be brought from a considerable distance. Aside from this, he tells us, all that was needed was a little carpentry. No testimony was necessary to show this. Any one, with a hammer and nails, and a few boards, might have closed the entrance within a few hours at most.

The judicial administrator admits that he had been told not to rent the building which had been used as a store until the place had been made rat-proof. The only formal notice ever served upon him was a peremptory demand that he should destroy the two houses within five days. In reply, he offered to make any necessary repairs in accordance with such plans and conditions as the department of health might prescribe. At least two telegrams were sent by the administrator requesting a reasonable time in which to make such repairs. No reply was made to either of these telegrams. But at the expiration of the five days four men, under the direction of the local health officer, began to destroy the two buildings.

There was testimony tending to show that the local health officer had spoken to the judicial administrator from time to time about the condition of the property and that the judicial administrator had as often stated that the estate was without funds, and had suggested that a notice be sent to the owners in Spain. It is not pretended that the judicial administrator was ever notified, either verbally or otherwise, that unless the unsanitary conditions were corrected within a reasonable time or within any specified time, other than the period of five days already mentioned, the buildings would be destroyed. The health officer who reported the situation to headquarters frankly stated, while on the witness stand, that such notice and opportunity would have been given to any delinquent property owner or agent other than José Pérez Barros.

In the circumstances it is a fair inference that, in the case of any other delinquent, the department of health would have been content, upon failure on the part of such owner or agent to act, to close the entrance to the covered court yard and to charge the expense involved to the account of the estate. But, be this as it may, mere exasperation on the part of a local health officer, even though the patience of such official be sorely tried, can not excuse either the failure to give a proper notice as required by law, or the doing of

.more damage than was reasonably necessary in order to abate the nuisance in question.

There is nothing whatever in the instant case upon which to base a rational conclusion that the destruction of the two buildings, or of either of them, was necessary in order to abate the nuisance. The health officer, upon whose report the action of the department was based, as we have already pointed out, freely concedes that the nuisance could have been speedily abated at slight expense by the judicial administrator. This officer was the principal witness for defendant, and his testimony upon this point is uncontradicted by that of any other witness. It is strongly corroborated by all the circumstances in the case. What could have been done so easily by the judicial administrator could and should have been done by the department of health.

By this of course we do not mean to say that it was incumbent upon the department to repair the premises, or even to rat-proof the floor of the dining room, if the necessity for rat-proofing could have been avoided by breaking and removing the concrete, or by some more simple expedient. But little stress, however, is laid upon the rat holes and the element of time was not an important factor in this aspect of the situation, as indicated by the absence of any time limit in the condition originally imposed, namely, that the premises were to be rat-proof before being used again as a place of business. In any event, the point is that "the power to abate any nuisance must be exercised in strict conformity with the statute," and that the exercise of this power can not be justified where "the measure adopted exceeds what is necessary to remove the offensive condition." 29 C. J. page 268, par. 83.

Especially should this be true where, as in this jurisdiction, any necessary expense incurred by the health authorities is made a lien upon the property, and the owner or agent is made criminally liable for the willful failure to abate a nuisance within a reasonable time after service of

a proper notice, and where, as in the instant case, the prop-- . erty in question belongs to absent heirs of a deceased owner and is worth many times the amount of any such expense.

In the case at bar no proper notice was ever served upon the judicial administrator. No opportunity whatever was afforded him to abate the nuisance in any way other than by the complete, immediate, and entirely unnecessary removal of the two buildings, or at least no such opportunity was extended as an alternative to such removal by the health authorities. That the method resorted to by the department of health was greatly in excess of what was necessary in order to abate the nuisance is not only self-evident but is openly admitted by the principal witness for defendant whose testimony upon this point, as we have already indicated, stands uncontradicted by that of any other witness.

The testimony for plaintiff indicates that the two buildings could have been repaired and painted at a maximum cost of five or six hundred dollars, before they were dismantled by the department of health, and that the bulk of this estimate was for painting. The carpentry involved would not have amounted to more than one hundred and fifty dollars. That testimony, which is uncontradicted, leaves little room for doubt that, at the time of the trial, to restore the buildings would have cost not less than eight hundred to one thousand dollars.

The prayer of the complaint was for fifteen hundred dollars, with interest at the legal rate from the date of filing, costs and attorney's fees.

The judgment appealed from must be reversed, and, in lieu thereof, the judgment of this court will be entered in favor of plaintiff for the sum of eight hundred dollars, with interest thereon at the legal rate from September 5, 1924, without special pronouncement as to costs.

Mr. Justice Texidor took no part in the decision of this this case.